UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN DOE,** <br><br> Plaintiff, <br><br><br> vs. <br><br> **UNIVERSITY OF MICHIGAN et al,** <br><br> Defendants. | **2:26-CV-10768-TGB-KGA** <br><br><br> **OPINION & ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> **(ECF NOS. 8, 10).** |

Plaintiff John Doe brings this action pursuant to 42 U.S.C. § 1983 against Defendants, including the University of Michigan (the "University"), where he is a student, alleging violations of his Fourteenth Amendment procedural due process rights. ECF No. 7. Plaintiff has filed a Motion for a Temporary Restraining Order. ECF No. 8 (redacted version); ECF No. 10 (unredacted, filed under seal). For the following reasons, Plaintiff's motion is **DENIED WITHOUT PREJUDICE**.

## I.   BACKGROUND

### A.   Factual Background

The following facts are taken from Plaintiff's complaint, *see* ECF No. 7, and a notarized affidavit submitted by Plaintiff, *see* ECF No. 9.[1]

---

[1] The Court held a telephonic status conference with counsel for the parties on March 18, 2026 to set a date for Defendant's response. Based on Defense counsel's statements during the status conference, the Court

Plaintiff John Doe enrolled at the University of Michigan as an undergraduate student in August 2022. ECF No. 7, PageID.119. He was enrolled in the Bachelor of Business Administration program in the Ross School of Business at the University of Michigan and had expected to graduate in May 2026. *Id.* Plaintiff was simultaneously working toward his Master of Business Administration degree, which he originally expected to complete by May 2027. *Id.*

Pursuant to the outcome of the University's Title IX disciplinary process, Plaintiff was suspended from the University of Michigan for two years effective February 18, 2026. *Id.* at PageID.140, 144.

On March 6, 2026, Plaintiff filed suit, alleging that the University of Michigan's investigation and disciplinary process deprived him of his due process rights under the Fourteenth Amendment. *Id.* at PageID.115.

---

is aware that Defendants contest some of the factual claims made by Plaintiff. While any such issues may be contested and resolved at the hearing on the motion for a preliminary injunction, when ruling on a temporary restraining order, all of the well-pleaded allegations of the complaint and affidavit filed in support of the motion for a temporary restraining order are taken as true. *See Cancer Wellness Foundation of Central Alabama, v. Conner*, No. 26-165, 2026 WL 711382, at *2 (M.D. Ala. Mar. 13, 2026) ("When ruling on a temporary restraining order, all of the well-pleaded allegations in a movant's complaint and uncontroverted affidavits filed in support of the motion for a temporary restraining order are taken as true." (cleaned up)); *see also Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976) ("For purposes of our review, all of the well-pleaded allegations of respondents' complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true.").

2

### 1. Investigation

The University of Michigan had initiated a Title IX disciplinary process based on allegations by a female student (the "Complainant") that Plaintiff engaged in a non-consensual sexual encounter with her on October 10, 2024. *Id.* at PageID.120. Plaintiff disputes that such an encounter occurred. *Id.*

Complainant originally made an online inquiry on December 13, 2024 with University of Michigan's Equity, Civil Rights & Title IX ("ECRT") office. *Id.* at PageID.129. On February 18, 2025, Complainant filed the complaint, alleging that a non-consensual sexual encounter had occurred on October 10, 2024 between Plaintiff and her in Complainant's off-campus apartment. *Id.* at PageID.120, 129.

Plaintiff was notified of the complaint on February 24, 2025. *Id.* at PageID.131. Plaintiff alleges that the delay between the date on which the complaint was filed and when he was notified violates the University's Policy on Sexual and Gender-Based Misconduct (the "Policy"), which provides that the Title IX Coordinator reviews within one business day. Respondent is notified immediately upon receipt of a Formal Complaint and next steps." *Id.*

Complainant was interviewed on April 9, 2025. *Id.* at PageID.130. Plaintiff appears to argue that the University's Policy dictates that an interview must occur *prior* to the filing of a formal complaint. *See id.*

(citing the Policy as stating that "Complainant will have three calendar days to review statement summary and transcript. Complainant can provide evidence at or following this interview.")

Complainant was sent a transcript and draft summary of the interview on May 12, 2025. *Id.* Complainant was given until May 18, 2025 to respond. *Id.* Plaintiff argues that this was in violation of the University's Policy. *See id.* (citing the Policy as stating that "Complainant will have three calendar days to review statement summary and transcript. Complainant can provide evidence at or following this interview.").

Complainant was also able to provide evidence from the date of the interview through the close of the investigation. *Id.* at PageID.131.

Plaintiff was interviewed on June 20, 2025. *Id.* Plaintiff argues that because the University's Policy states that the "Respondent can provide evidence *at this or following this* interview," *id.* (emphasis added), his "ability to gather evidence and participation was held back an additional 72 days due to the University's delay due to insufficient staffing." *Id.* Plaintiff argues that this delay gave Complainant 72 additional days to gather and provide evidence to the investigator. *Id.* Plaintiff alleges that this delay occurred although he diligently attempted contact with the ECRT investigator, Conor Caplis. *Id.* at PageID.132. Plaintiff alleges that he did not receive a response from ECRT until after he filed for dismissal. *Id.*

4

Plaintiff was sent the interview transcript and summary for edits/feedback on July 7, 2025. *Id.* Plaintiff appears to argue that this delay was in violation of the University's Policy. *Id.* at PageID.131–32 (citing the Policy as stating that "Respondent will have three calendar days to review statement summary and transcript.").

Complainant's four witnesses were interviewed on April 9, 2025, May 23, 2025, and May 28, 2025. *Id.* at PageID.132–33. Plaintiff alleges that because Complainant's witnesses were interviewed before he was, "Complainant's witnesses were only questioned about Complainant's narrative. No questions about Plaintiff's recollection were asked because [he] had not been interviewed." *Id.* at PageID.132–33. Plaintiff alleges that the timing of these interviews violates the University's Policy. *Id.* at PageID.132–33.

Plaintiff argues that because the University interviewed Complainant and her witnesses prior to interviewing him, he was "significantly prejudiced." *Id.* at PageID.133. Specifically, Plaintiff argues that (1) "Complainant and her witnesses were interviewed much closer to the events, while those events were fresh in their minds. This was crucial because later, they were found more credible because of the details they recalled."; (2) investigators did not have any indication of which facts were disputed at the time they interviewed Complainant and her witnesses; and (3) Plaintiff was delayed in formulating his defense. *Id.* at PageID.133–34.

Plaintiff also alleges that while "the University abided by its promise of completing the additional interviews of witnesses in 1-6 weeks for Complainant" the University failed to do so for Plaintiff. *Id.* at PageID.134 (emphasis removed).

On July 17, 2025, Plaintiff was notified that the ECRT intended to submit a Preliminary Report on July 24, 2025. *Id.* at PageID.134–35. Plaintiff was informed that evidence submitted after July 24, 2025 would be "given less evidentiary weight than materials received before the [preliminary report] was issued." *Id.* at PageID.135. Plaintiff alleges that this time frame is in violation of University Policy, which states that "Parties have 10 calendar days to respond" to a preliminary report. *Id.* at PageID.134.

Plaintiff requested that the investigator obtain Complainant's academic records, medical records, and mental health records. *Id.* at PageID.135–36. Plaintiff argues that these records were relevant to disproving Complainant's allegations. *Id.* a PageID.137. Plaintiff alleges that "the investigators refused to gather the information – as was required by its own policy." *Id.*

Michael Maiden, the ECRT investigator who was appointed after Caplis left her position as investigator, accepted feedback on the preliminary report until July 28, 2025. *Id.* On July 29, 2025, he asked Plaintiff "three clarification questions," to which Plaintiff was required to respond by August 1, 2025. *Id.*

6

According to Plaintiff, Maiden "sent" the preliminary report on August 14, 2025. *Id.* at PageID.138. Plaintiff does not provide information as to whom it was sent. Maiden permitted "up to ten (10) pages of feedback." *Id.*

Plaintiff "requested additional investigation and questions." *Id.* Specifically, Plaintiff requested (1) the "[c]omplete text messages between the parties"; (2) photographs; (3) Complainant's transcript; (4) Complainant's mental health records; (5) emails from Complainant to the University's ECRT office; (6) "the specific sections of the University's sexual and gender-based misconduct policy that he had allegedly violated." *Id.* The University only responded by requesting additional text messages from the Complainant. *Id.* at PageID.139. The University "did not conduct any additional investigation, and it refused to obtain and provide the records and information requested by Plaintiff." *Id.*

A hearing was conducted on September 30, 2025. *Id.* Plaintiff alleges that the University's Policy requires that "[t]he Hearing Officer and each party's advisor may ask questions of Complainant, Respondent, and/or witnesses." *Id.* Although Plaintiff's Complaint is structured to list alleged violations of the University's Policy under each of the Policy's subsections, Plaintiff does not allege that the University failed to follow this subsection of the Policy.

On November 4, 2025, a decision was issued. *Id.* Plaintiff alleges that the University's Policy requires that any decision be communicated "within ideally within [sic] 30 days of the hearing." *Id.*

On November 13, 2025, the Office of Student Conflict Resolution ("OSCR") issued a sanction of a two-year suspension of Plaintiff from the University. *Id.* Plaintiff argues that this sanction was imposed without regard to the factors that are required to be considered. *Id.*

### 2. Appeal

Subsequently, Plaintiff submitted an appeal. *Id.* at PageID.141. Complainant submitted additional evidence which had never been provided to the Plaintiff. *Id.* Although he objected to the submission of new evidence, the external reviewer responsible for making a determination of the appeal relied on this newly submitted evidence. *Id.* at PageID.141–42.

Plaintiff also submitted new evidence. *Id.* at PageID.142. The external reviewer dismissed Plaintiff's new evidence as having been "already considered." *Id.*

Plaintiff alleges that the external reviewer failed to consider the ways in which procedural deficiencies in the evidentiary process prejudiced his ability to defend against the allegations. *Id.* at PageID.143.

On January 26, 2026, the external reviewer issued an opinion finding that the two-year suspension was "inappropriate and out of proportion to the circumstances of the violation." *Id.* at PageID.143.

The review of the appeal was concluded on February 13, 2026 by the Vice President of Student Life Laura Jones. *Id.* at PageID.144. Jones disagreed with the decision of the external reviewer "and returned the sanction to a two-year suspension." *Id.* Plaintiff argues that Jones's review of the appeal was untimely as per the University's Policy. *Id.* Plaintiff alleges that the University disagrees with his understanding of the Policy and provided a different interpretation. *Id.*

On February 18, 2026, Plaintiff "was unenrolled from classes and cut off from any University networks/accounts without warning." *Id.*

Plaintiff argues that although the University's Policy states that the "expected timeline for the entire process (including appeals) is 180 days," his investigation lasted 366 days. *Id.* at PageID.129.

### B.    Procedural Background

On March 6, 2026, Plaintiff initiated suit. ECF No. 1. On the same date, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Motion. ECF No. 2.

On March 9, 2026, the Honorable Matthew F. Leitman denied Plaintiff's Motion for a Temporary Restraining Order and Preliminary Motion, finding that "Doe has neither attempted to nor satisfied [the] requirements" of Fed. R. Civ. P. 65(b)(1). ECF No. 3, PageID.78.

9

On March 13, 2026, Plaintiff filed an Amended Complaint, ECF No. 7, and a Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 8 (redacted version); ECF No. 10 (unredacted, filed under seal). Attached to the motion is Plaintiff's sworn and notarized affidavit, and Plaintiff's counsel's sworn and notarized affidavit. ECF No. 8, PageID.195.

On March 16, 2026, Judge Leitman recused himself from the case and it was randomly reassigned by the Clerk's Office to the undersigned. ECF No. 11. On the same date, Defendants filed a notice of appearance. ECF No. 12.

On March 18, 2026, the Court held a telephonic status conference with both parties. On the same date, the Court issued an order construing the filing contained at ECF No. 8 as a Motion for a Temporary Restraining Order. *See* E.D. Mich. LR 65.1 ("Requests for temporary restraining orders and for preliminary injunctions must be made by a separate motion and not by order to show cause.").

Plaintiff filed a motion for a preliminary injunction on March 20, 2026. *See* ECF No. 15. The Court set a hearing on this motion on April 10, 2026.

10

## II.   LEGAL BACKGROUND

Plaintiff filed this motion pursuant to Federal Rule of Civil Procedure 65, requesting that the Court grant a temporary restraining order. ECF No. 8.

Under Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining order without notice to the adverse party[2] if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

"The Supreme Court has stated that the Rule 65(b) restrictions 'on the availability of Ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action

---

[2] Here, while Defendants were notified of the Motion for a Temporary Restraining Order, "the notice requirement of Rule 65(a)(1) also implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 484 (6th Cir. 2002) (citation omitted). Thus, Rule 65(b) applies if the adverse party has not received notice and been given the opportunity to be heard at a hearing. *Id.*; *accord Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007); *see Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148, 2023 WL 1777387, at *5 (6th Cir. Feb. 6, 2023) ("the party opposing the injunction must be given a fair opportunity to oppose the application and to prepare for such opposition" (citation omitted)).

taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439, (1974)). Accordingly, these requirements must be "scrupulously honored." *Alahverdian v. Nemelka*, No. 15-060, 2015 WL 1276453, at *2 (S.D. Ohio Mar. 19, 2015)*; accord Vesuvius USA Corp. v. Gammariello*, No. 25-2706, 2025 WL 3633977, at *2 (N.D. Ohio Dec. 15, 2025) (collecting cases); *B&P Littleford, LLC v. Prescott Mach., LLC*, No. 25-13348, 2025 WL 3048961, at *3 (E.D. Mich. Oct. 31, 2025) (Ludington, J.).

Furthermore, "ex parte restraining orders should be limited to preserving the status quo only for so long as is necessary to hold a hearing." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).

Thus, an ex parte temporary restraining order is "only appropriate where the applicant would face irreparable harm so immediate that it would be improper to wait until after a preliminary injunction hearing to enjoin the non-movant's conduct." *Erard v. Johnson*, 905 F.Supp.2d 782, 791 (E.D. Mich. 2012). Accordingly,

> to obtain an *ex parte* TRO (as opposed to temporary injunctive relief in the form of a preliminary injunction), the movant must show that it would suffer irreparable injury were it denied an *ex parte* TRO. This means that the movant must show that it would suffer irreparable injury if it were denied injunctive relief that would expire in 14 days (as contrasted

12

with being denied injunctive relief that presumptively would last the duration of the litigation, as would a preliminary injunction)

*Boyd v. Nat'l Collegiate Athletic Ass'n*, No. 25-00729, 2025 WL 1839987, at \*3 (M.D. Tenn. July 3, 2025).

## III.   DISCUSSION

Under Federal Rule of Civil Procedure 65(b)(1)(A), the court may issue a temporary restraining order without notice to the adverse party only if: "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Such irreparable harm must be "'certain and immediate,' not 'speculative or theoretical.'" *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, 148 F.4th 365, 371 (6th Cir. 2025) (citation omitted).

When addressing a Motion for Temporary Restraining Order, the relevant harm considered by the Court is the marginal harm that would accrue if injunctive relief was denied for the time period between denial of the motion for the Temporary Restraining Order and the Court's disposition of the Motion for a Preliminary Injunction. *See Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705, 710 (E.D. Mich. 2006) (Lawson, J.) ("A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable harm during the time required to give notice to the opposite

13

party or where notice itself may precipitate the harm."); *Boyd*, 2025 WL 1839987, at *3 ("For now, the Court does not dispute that Plaintiff would be irreparably harmed if he were not granted a preliminary injunction, i.e., injunctive relief that presumptively lasts for the duration of this litigation. But Plaintiff does nothing to show that he would be irreparably injured absent temporary injunctive relief that would commence immediately, *but last no more than fourteen days.*").

Plaintiff's Motion for a Preliminary Injunction will be fully briefed by April 3, 2026. A hearing on the Motion for a Preliminary Injunction has been set for April 10, 2026. Thus, Plaintiff must show that he would suffer irreparable injury, loss, or damage if he was denied injunctive relief which would expire on April 10, 2026. *Cf. First Tech. Safety Sys., Inc.*, 11 F.3d at 650 ("ex parte restraining orders should be limited to preserving the status quo only for so long as is necessary to hold a hearing"); *Boyd*, 2025 WL 1839987, at *3 ("the movant must show that it would suffer irreparable injury if it were denied injunctive relief that would expire in 14 days").

Attached to his Motion for a Temporary Restraining Order, Plaintiff submitted a sworn and notarized affidavit. *See* ECF No. 8, PageID.195–97. In that affidavit, Plaintiff attests to following relevant facts:

- "I was set to graduate in May of 2026, 8 weeks from now."
- "As of February 19, 2026, I have been suspended for a term of two (2) years and cannot attend any classes."

14

- "I had completed all but 8 weeks of work in for my BBA program in this Winter 2026 term."
- "The classes I have been enrolled in are only available during the Winter semester."
- "I have completed nearly all of the coursework in the classes I was [e]nrolled in. If the injunction is granted, I will be able to finish my undergraduate program."

*Id.* at PageID.195–96.

If some type of temporary restraining order is not granted—either fully or partially modifying the suspension—before April 10, 2026, when the Court will hold a hearing on Plaintiff's Motion for a Preliminary Injunction, Plaintiff will lose the opportunity to complete approximately two weeks of course work. This much is certain. The question is whether such a delay would make it impossible for Plaintiff to finish his semester in time in the event that he succeeds in winning a preliminary injunction after the hearing on April 10. In considering this question, the Court recognizes that speculation is not permissible. *See D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019).

First, Plaintiff's affidavit does not offer specific facts showing that he would face irreparable injury if he were to lose the opportunity to complete *two weeks* of course work, as opposed to *eight weeks* of course work. While two weeks of course work are a significant amount, especially given that Plaintiff is taking graduate level courses, Plaintiff has already missed more than four weeks of course work due to this suspension. Based on the limited record, Court cannot find that Plaintiff

15

has shown that "certain and immediate," as opposed to "speculative" irreparable harm, *Int'l Union of Painters & Allied Trades Dist. Council No. 6,* 148 F.4th at 371, will occur if the Court were to deny Plaintiff's Motion for a Temporary Restraining Order. In other words, Plaintiff has not shown, with specific facts, that he is "likely to suffer some future irreparable harm" that is both immediate and certain as a result of missing two weeks of courses. *See id.*

Second, "[t]he length of time that a party takes to file suit or request injunctive relief is also relevant to the irreparable harm inquiry." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008). Here, Plaintiff waited two weeks after being advised of his suspension before initiating suit and moving for injunctive relief. Plaintiff's two-week delay in acting undermines the force of his allegation that two additional weeks of missed coursework would cause him irreparable harm. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771–72 (E.D. Mich. 2003) ("Plaintiffs' delay in seeking a preliminary injunction undermines their allegation of irreparable harm."). *Kendall Holdings, Ltd.*, 630 F. Supp. 2d at 867 ("The length of time that a party takes to file suit or request injunctive relief is also relevant to the irreparable harm inquiry.").

Third, even if Plaintiff were to show, with specific facts, that his graduation would certainly be delayed because of two additional weeks of missed course work, such harm is not clearly irreparable because it

could mostly be mediated through economic damages. *See, e.g., Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982) ("We can conceive of no irreparable harm that would accrue to her in allowing her graduation to await the outcome of the trial on the merits; any damages to her from deferring her career as a military officer in that period of time would surely be compensable by monetary damages."); *Garfield v. Middle Tennessee State Univ.*, No. 21-00613, 2021 WL 9979155, at *2 (M.D. Tenn. Sept. 1, 2021) ("Despite Plaintiff's assertions that her inability to progress with her classmates is irreparable, courts have regularly found that interruptions or delays of educational programs are not irreparable harm." (collecting cases)); *Roden v. Floyd*, No. 16-11208, 2018 WL 6816162, at *5 (E.D. Mich. Nov. 13, 2018) (Patti, J.) (collecting cases), *adopted*, No. 16-11208, 2018 WL 6815620 (E.D. Mich. Dec. 27, 2018); *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 714 (S.D. Ohio 2015) ("courts have also held that a suspension from school is not irreparable" (collecting cases)); *Doe v. Vassar Coll.*, No. 19-9601, 2019 WL 6222918, at *6 (S.D.N.Y. Nov. 21, 2019) ("the harms a plaintiff might suffer from a delay in graduation are quantifiable and can be adequately remedied by money damages, should the plaintiff prevail on the merits of his case"); *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 687 (S.D. Ohio 2012) ("There is some authority for the proposition that an interruption in an educational program is not, of itself, an irreparable injury."); *cf. Doe*, 872 F.3d at 407 (finding irreparable harm because plaintiff "would be

17

suspended for a year *and* suffer reputational harm both on and off campus" (emphasis added)); *but see A.F. v. Ass'n of Am. Med. Colleges*, 678 F. Supp. 3d 952, 968 (S.D. Ohio 2023) ("While this Court has concluded that lost educational opportunities and the inability to pursue a vocation are sufficient to establish irreparable injury, scant evidence exists here suggesting such an injury is likely in the absence of a preliminary injunction.").

At the same time, the Court is concerned that the posture of this case presents the possibility that Plaintiff's graduation could be delayed by up to two years, even if Plaintiff were to prevail on the merits, which would work a manifest injustice. But there is little danger that such an outcome will ensue solely due to a denial of Plaintiff's Motion for a Temporary Restraining Order today. This is because, if Plaintiff should succeed at the preliminary injunction stage after the April 10, 2026 hearing, the Court has the authority to craft injunctive relief that will address such a risk. Equitable relief could be fashioned, for example, to require the University to take the necessary steps facilitating Plaintiff's timely completion of his undergraduate requirements, even if such accommodations extend past his graduation date.

Accordingly, the Court concludes that Plaintiff has not established, through the record before the Court, that it is likely that immediate and irreparable harm will accrue before the Defendant can be heard in opposition. *See* Fed. R. of Civ. P. 65(b)(1)(A).

18

Where a movant fails to satisfy the requirements of Rule 65(b)(1), courts deny ex parte requests for a temporary restraining order without prejudice and without reaching the merits of the traditional injunctive relief factors. *See, e.g., Slave Legacy, LLC v. Son of Slave*, No. 23-152, 2023 WL 3919317, at \*6 (S.D. Ohio June 9, 2023) (Because plaintiff did not fulfill the requirements of Fed. R. Civ. P. 65(b)(1)(A), "the Court denies the TRO Motion without reaching its merits."); *B&P Littleford, LLC*, 2025 WL 3048961, at \*3 ("If the movant clears [the] procedural hurdles [of Fed. R. of Civ. P. 65(b)(1)], the court *then* turns to the merits." (emphasis added)).

The Court's opinion today is a narrow one: at this stage of the litigation, Plaintiff has failed to demonstrate that it is likely that certain and immediate irreparable harm would occur from the denial of Plaintiff's motion for a temporary restraining order before giving Defendants' an opportunity to respond. Although "[o]n the present record … the Court finds that the drastic remedy of granting a temporary restraining order without reasonable notice and a response from [Defendants] is not justified," *Hacker*, 450 F. Supp. 2d at 710, Plaintiff "may well be entitled to equitable relief," *id.*, after Plaintiff's motion is fully briefed.

19

## IV.   CONCLUSION

For the following reasons, Plaintiff Motion for a Temporary Restraining Order (ECF Nos. 8, 10) is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED**.

Dated: March 24, 2026              s/Terrence G. Berg
                                   HON. TERRENCE G. BERG
                                   UNITED STATES DISTRICT JUDGE