**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOHN DOE,** *an individual,*

Plaintiff,

v.

Case No: 26-CV-10768
Hon. Terrence G. Berg

**UNIVERSITY OF MICHIGAN BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN,** *a constitutional corporate body,* **ELIZABETH SENEY, TAMIKO STRICKMAN, ERIK WESSEL, LAURA BLAKE JONES, MICHAEL RYANS** and **SUZANNE QUINN MCFADDEN,** *employees of the University of Michigan, sued in his or her personal and official capacities, jointly and severally,*

Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com

**Miller, Canfield, Paddock and Stone, P.L.C**
Brian M. Schwartz (P69018)
Joel C. Bryant (P79506)
Gabrielle Bayne (P88706)
Attorneys for Defendants
150 W. Jefferson Road, Suite 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bryant@millercanfield.com
bayne@millercanfield.com
fitch@millercanfield.com

## TABLE OF CONTENTS

Index of Authorities ---------------------------------------------------------------------------ii

A. Plaintiff Has a Strong Likelihood of Success on the Merits ----------------------------1

B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief--------------------- 14

C. Issuance of an Injunction Would Not Cause Substantial Harm to Others and Would Serve the Public Interest --------------------------------------------------- 16

D. An Order Enjoining Against Plaintiff's Suspension Would Preserve the Status Quo------------------------------------------------------------------------------ 18

## INDEX OF AUTHORITIES

**Cases**

*Abney v. Amgen, Inc.*,
443 F.3d 540 (6th Cir. 2006) ........ 15

*Balow v. Michigan State Univ.*,
620 F. Supp. 3d 694 (W.D. Mich. 2022) ........ 20

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
511 F.3d 535 (6th Cir. 2007) ........ 1

*Connection Distrib. Co. v. Reno*,
154 F.3d 281 (6th Cir. 1998) ........ 18

*Cox v. Jackson*,
579 F. Supp. 2d 831 (E.D. Mich. 2008) ........ 21

*Doe v. Baum*,
227 F. Supp. 3d 784, 799 (E.D. Mich. 2017) ........ 6

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) ........ 18

*Doe v. Cummins*,
662 F. App'x 437 (6th Cir. 2016) ........ 18

*Doe v. Miami Univ.*,
882 F.3d 579 (6th Cir. 2018) ........ 18

*Doe v. Univ. of Cincinnati*,
872 F.3d at 407 (6th Cir. 2017), ........ 14

*Doe v. Univ. of Michigan*,
721 F. Supp. 852 (E.D. Mich. 1989) ........ 14

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
23 F.3d 1071 (6th Cir. 1994) ..................................................................... 18

*Grayned v. City of Rockford*,
408 U.S. 108-109 (1972)..................................................................... 14

*Hill v. Colorado,*
530 U.S. 703 (2000)., ..................................................................... 5

*Kerwin on behalf of Nat'l Lab. Rels. Bd. v. Trinity Health Grand Haven Hosp.*,
174 F.4th 942 (6th Cir. 2026) ..................................................................... 15

*Kolender v. Lawson*,
461 U.S. 357-358 (1983)..................................................................... 14

*Kutchinski as next friend to H.K. v. Freeland Cmty. Sch. Dist.*,
69 F.4th 350 (6th Cir. 2023) ..................................................................... 1

*Marshall v. Ohio Univ.*,
2015 WL 1179955 (S.D. Ohio Mar. 13, 2015) ..................................................... 6

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ..................................................................... 12

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) ..................................................................... 14

*Overstreet v. Lexington–Fayette Urban Cty. Gov't*,
305 F.3d 566 (6th Cir. 2002) ..................................................................... 14

*People v. Oliphant*,
399 Mich. 472, 491 (Mich. 1976) ..................................................................... 10

*Stenberg v. Cheker Oil Co.*,
573 F.2d 921 (6th Cir. 1978) ..................................................................... 19

*U.S. v. Kettles*,
970 F.3d 637 (6th Cir. 2020) .......... 12

*United States v. Williams*, 553 U.S. 285, 304 (2008) .......... 14

**Statutes**

18 U.S.C. § 2242(2)(A), .......... 5

### A. Plaintiff Has a Strong Likelihood of Success on the Merits

Plaintiff has shown that he has more than a mere possibility of success on the merits of his void for vagueness claim. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). The Policy deprived Plaintiff of due process because its vague language authorized and encouraged arbitrary and discriminatory enforcement. *Kutchinski as next friend to H.K. v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 360 (6th Cir. 2023). The University purports to have established an objective rule governing whether the student's conduct constitutes a violation. The Hearing Officer did not apply that rule. Instead, she substituted a different inquiry—whether she believed the Complainant communicated "Consent"—without determining what a "Reasonable Person" in Plaintiff's circumstances would have understood about consent. If the Policy announces a defined objective reasonable-person standard that must be applied but also allows for responsibility to be imposed under an entirely subjective standard, the Policy fails as vague. Defendant cites to *Doe v. Miami Univ.*, stating that a "mere failure … to follow its own internal guidelines does not give rise to a procedural due process violation." ECF No. 101, PageID.3180. But *Miami* is unrelated to the facts here. The court found that procedural issues as to the type and timing of notice were not a due process violation. This is not a matter of failing to follow an administrative procedure (time allotted for the investigation, etc.); it is a matter of a Plaintiff being deprived of constitutional due process as to the ultimate issue.

Plaintiff's original brief set forth in detail how the Policy's vagueness manifested a subjective, arbitrary outcome. Defendants fail to address Plaintiff's central point –the Policy's vague language led to a legally prohibited, subjective, ad hoc enforcement, as can be readily seem from the Written Determination. This led to a catastrophic result for Plaintiff. Defendants fail to justify the multiple subjective, arbitrary, conclusions reached by the Hearing Officer (*e.g.* ECF No. 94, PageID.2573-2575). They fail to explain how, as matter of law, the Policy could pass constitutional muster where the Hearing Officer failed to address the only specific directive required by the Policy as to finding a violation:

> "<u>In evaluating whether Consent was given under this Policy, the issue is</u>:
> - Did the person initiating Sexual Activity know that the conduct in question was not consensual?
> - If not, would a Reasonable Person who is unimpaired by alcohol or drugs have known the conduct was not consensual?"
>
> If the answer to either of these questions is "Yes", Consent was absent."

ECF No. 94-2, PageID.2614. (emphasis added)

Ironically, Defendants laud the "Reasonable Person" standard as a bulwark against arbitrary enforcement, stating "the Policy does not invite arbitrary enforcement because "the Policy applies a 'reasonable person' standard…; "[i]t employs an appropriate standard by asking whether a reasonable person would have understood the conduct to be consensual under the circumstances… to "men of common intelligence…" ECF No. 101, PageID.3180; 3178. (emphasis added). They add, "[h]ere, the Hearing Officer properly applied the plain language of the Policy…" ECF No. 101,

Page3180. (emphasis added). Defendants are correct that the ultimate decision is intended to hinge on the reasonable person standard. ECF No. 101, PageID.3158, 3178, 3180. But Defendants are flatly incorrect that the "Hearing Officer properly applied the plain language of the Policy." To the contrary. As set forth below there was no analysis by the Hearing Officer of what a "reasonable person would have known" as to the conduct being nonconsensual. Defendant cites no such evidence. There is none. The Hearing Officer simply abandoned this crucial analysis. ECF No. 94, ECF PageID.2571-2572. Instead, she subjectively chose to rely on a different analysis:

> "Because consent to engage in one activity does not amount to consent to engage in another activity, and because Complaint covered her chest and signaled that there may be a reason Respondent should not be doing what he was doing (i,e,..her period), the evidence does not support a determination that there was clear and unambiguous agreement for digital penetration. . . Taking all these facts together there is nothing in the record that suggests that there was clear and unambiguous agreement for digital penetration…the record is devoid of information to support a finding that Complainant gave consent to digital penetration…"

ECF No. 97-4 at 38 (filed under seal). At no point does the Hearing Officer consider whether a "REASONABLE PERSON" have known that the conduct in question was not consensual." As set forth in Plaintiff's initial brief, the University record contained significant evidence upon which a Hearing Officer would have found, based on a preponderance of the evidence and where the burden of proof is on the Complainant, that a Reasonable Person would not have known that the conduct in question was not consensual. Plaintiff was entitled to have that evidence reviewed and analyzed, but that did not occur due to the conflicting language in the Policy. It appears that the vague, at

times incoherent language in the "consent" sections of the Policy led the Hearing Officer to focus on more general language which she believe purported to define consent, including but not limited to, "…she covered her chest with her arms…, she "did not outwardly express consent to digital penetration"; earlier she said, "Stop and Don't do that as to an earlier act of touching her buttocks." ECF No. 97-4 at 38 (filed under seal).

Defendants' assertion that the Hearing Officer applied the "Reasonable Person" standard relies on a blatant misstatement of the Written Determination. Defendants falsely state that the Hearing Officer held that "Taking all [**<u>the</u>**] facts together there is nothing in the record that suggests there was 'clear and unambiguous agreement' for digital penetration." ECF No. 101, PageID.3164-3165 (emphasis added), quoting ECF No. 97-4 at 38 (filed under seal). In fact, her conclusion was based on "**<u>these facts</u>**", referring to the facts she subjectively found persuasive as to whether the Complainant gave "Consent", not an objective analysis of "**<u>the facts</u>**" or the totality of the record. The Hearing Officer did not objectively analyze what a "reasonable person would have known" as to whether digital penetration was nonconsensual. Instead, she parsed the record for facts that she subjectively believed showed that the Plaintiff would not have consented to digital penetration.:

> "Because consent to engage in one activity does not amount to consent to engage in another activity, and because Complaint covered her chest and signaled that there may be a reason Respondent should not be doing what he was doing (i.e., her period), the evidence does not support **<u>a determination that there was clear and unambiguous agreement for</u>**

> **<u>digital penetration</u>**. This is particularly true when Complainant had previously told Respondent "Stop" and "Don't do that," in response to his earlier act of putting his hand in her pants, beneath her underwear, and touching her buttocks. Additionally, it is undisputed that Complainant told Respondent she did not want to have sex that night, and that Respondent knew Complainant was sexually inexperienced. Taking all **<u>these facts together</u>** there is nothing in the record that suggests that **<u>there was "clear and unambiguous agreement for digital penetration."</u>** ECF No. 97-4 at 38 (emphasis added; filed under seal).

The Hearing Officer repeatedly stated that she analyzed whether she believed "there was clear an unambiguous agreement for digital penetration" although, as Defendants admit, this was not the question at hand.

The vague, complicated language that came before and after the "Reasonable Person" language apparently caused the Hearing Officer to subjectively and arbitrarily decide what she would consider in her ultimate finding. The descriptions of "Consent" and how it might or might not be "inferred" subsumed the "Reasonable Person" standard in vague, and subjective terms.

Defendants do little more than recite excerpts from the Policy's definition of "Consent" and state, in conclusory fashion, that it uses common, "easily understood" language. The reality is that Defendants removed the definition of "Consent" from the realm of common sense understanding by creating their own vague, convoluted, multi-paragraph definition for this term. This makes the Policy distinguishable from the enactments in *Hill v. Colorado*, and 18 U.S.C. § 2242(2)(A), which simply rely on the common, dictionary definition of the words used, such as "consent" and "engage in". 530 U.S. 703, 732 (2000). These enactments do not seek to create unique, multi-layered

and convoluted definitions for these terms. Hence, people may simply rely on their common meanings.

Here, the Policy overlays its own meaning onto the word "Consent" and defines it with general terms that elude precise definition. That Defendants argue that the words making up their unique definition of "Consent" have different meanings than those proffered in Plaintiff's brief further proves that the Policy's reliance on undefined terms renders it vague. Likewise, the only language at issue in *Doe v. Baum* was the term "incapacitated", which was expressly defined. *Doe v. Baum*, 227 F. Supp. 3d 784, 799 (E.D. Mich. 2017), *rev'd on other grounds and remanded*, 903 F.3d 575 (6th Cir. 2018). The Court reasoned that regardless of what criteria was employed to prove the fact in question, it was "plain" "what fact must be proved: that the complainant lacked the physical or mental capacity to make informed, rational judgments." *Baum*, 227 F. Supp. 3d at 799. The Policy does not make clear what fact must be proved. It sets forth a lengthy, multi-paragraph definition of what might or might not constitute "Consent" using undefined, general terms that elude precise definition. This vague language envelops the "Reasonable Person" standard, and the Policy fails to specify whether every aspect of the multi-paragraph definition of "Consent" and the "Reasonable Person" standard and fails to specify the relevance, if any, of the multi-paragraph definition of "Consent" to the "Reasonable Person" standard.

This is unlike the policy at issue in *Marshall v. Ohio Univ.*, 2015 WL 1179955, at *6 (S.D. Ohio Mar. 13, 2015), which expressly set forth that both the subjective and

objective components of its policy must be satisfied for a finding of responsibility to be made ("§ 3 .004 requires an individual's actions to be objectively and subjectively severe or pervasive so as to cause, or be intended to cause, an intimidating, hostile, or offensive work, academic, or living environment"). Moreover, unlike the Policy at issue here, the policy in *Marshall* puts individuals on notice as to what specific circumstances the university would consider in making a finding of responsibility. *Id.*

Defendants falsely claim that the Policy is not vague as to the relevant time frame the Hearing Officer is to analyze and assert that it does not leave factfinders to their own subjective perceptions merely because the "Reasonable Person" standard exists. ECF No. 101, PageID.3177. This argument fails because the "Reasonable Person" standard was not applied. The evidence that was not allowed was important here. Immediately after the alleged touching Complaint stated that she said there was "no blood" and "okay." Moreover, neither the standard for "Consent" nor the "Reasonable Person" standard set forth in the Policy include any language referring to facts occurring "before engaging" in sexual activity or after doing so. Defendants' addition of this language significantly misstates the Policy, which, at least in the following language appears to contemplate consideration of the totality of the circumstances:

> "In cases involving prior or current relationships, the manner and nature of prior communications between the parties and the context of the relationship may have a bearing on the presence of Consent." ECF No. 94, PageID.2569.

Here it was uncontested that the parties had a "relationship", including being friends, "making out", Plaintiff sleeping over at Complaints house, and sharing the sofa with her. ECF No. 97-3 at 40 (filed under seal); ECF No. 97-1 at 7 (filed under seal). It is further uncontested that Complainant sought a romantic relationship with Plaintiff. ECF No. 97-1 at 3, 6 (filed under seal). Because the Policy is vague as to whether and how the parties' prior communications are relevant to "Consent", the Hearing Officer was invited to make a subjective determination on this issue – she chose to ignore it completely.

The above language is in obvious tension with the Policy's apparent directive that non-verbal communications are irrelevant to the presence of "Consent". The Policy language stating that "Consent is not to be inferred from silence, passivity, or a lack of resistance, and relying on non-verbal communication alone may not be sufficient to determine Consent" also contradicts an earlier aspect of the definition, which specifically states that "Consent" can be communicated non-verbally, through "actions". The ambiguity created by these portions of the Policy left the Hearing Officer to guess whether and when a party's actions are relevant to a determination of wrongdoing. Assuming that some non-verbal communication could suffice, the Policy gives no examples, context, or any principled way for students or factfinders to distinguish what non-verbal communications could satisfy the Policy, or when a verbal communication is required to avoid an adverse finding. As set forth in Plaintiff's brief, this ambiguity manifested a subjective outcome in Plaintiff's case.

The Hearing Officer subjectively decided which actions to consider and which to ignore or discard. Given the parties' prior communications, the fact that the Complainant did not use clear words to express there was no consent to digital penetration is highly relevant and, but for the vague standard set by the Policy, should have been considered. Because of the Policy's vague language, the Hearing Officer subjectively chose not to consider how Plaintiff and the Complainant previously communicated, and to discard the Complainant's non-verbal communications.

Without citing the record or case law, Defendants attempt to recast Plaintiff's examples of how the Policy's vagueness warped the outcome in this case as a mere challenge to the Hearing Officer's credibility determinations. ECF No. 101, PageID.3177. Nowhere in Plaintiff's briefing is there a reference to a credibility issue. Complaint being "steadfast" in her position during the administrative complaint process is not determinative of whether, objectively, a Reasonable Person would have thought there was no consent to digital penetration. The facts show that, in fact, Complaint was not "steadfast." She herself did not think she had been sexually assaulted at the time of the event, or for at least a week later. ECF No. 97-1 at 17-19; 21 (filed under seal).

Contrary to Defendants' assertions, the Hearing Officer was clearly unable to differentiate whether she was to determine what the two parties understood to have occurred; what a reasonable person would have known based on the facts of the encounter; or her own subjective, hindsight view of what she believed occurred. The

Policy failed to provide any ascertainable standard for determining which of these questions controlled the determination of responsibility.

Because the Policy does not define the temporal scope of evidence relevant to whether the Policy was violated it invites fact finders to make subjective determinations about whether facts are relevant. This ambiguity manifested a subjective and arbitrary result here. The Hearing Officer adopted an unstated temporal limitation: evidence of "Consent" can only exist prior to the challenged sexual act. In doing so, she found that the following facts were irrelevant: immediately after digital penetration, Complainant said "okay – not blood"; when "Respondent said something like, "I don't think you're into this," Complainant denied it, and stated, "What are you talking about?" and testified that she was "confused about him wanting to leave". ECF No. 97-3 at 33 (filed under seal). Complaint admitted that she did not believe she had been sexually assaulted until a week or more had passed. ECF No. 97-1 at 17-19; 21 (filed under seal). The Hearing Officer subjectively chose not to consider Complainant's statements and impressions immediately after the alleged act, which, on their face contradict the Hearing Officer's interpretation of what occurred.

Contemporaneous statements and conduct by Complainant are circumstantial evidence[1] bearing on what occurred moments earlier. Under the Policy, a Reasonable

[1] Michigan criminal law recognizes that surrounding circumstances and subsequent conduct can be relevant to consent. In *People v. Oliphant*, 399 Mich. 472, 491 (1976), the Michigan Supreme Court held that, where there is contradictory testimony on the key

Person would have relied on these facts to indicate that the interaction was consensual. A constitutionally valid adjudication could not simply refuse to consider exculpatory facts merely because they occurred moments after the touch in question. Indeed, if events occurring after sexual contact are categorically irrelevant to the issue of "Consent", Plaintiff should have prevailed. It is uncontested that at the time of the encounter Complainant did not think she had been assaulted, nor did she believe an assault had occurred the next morning, or that everything was not "okay." ECF No. 97-3 at 39 (filed under seal). It took Complainant over a week to change her mind on this point. This was very relevant given that the burden is on the student to discern consent in the moment. If the complainant is not aware at the time of the event that the act was not consensual it is logical that a reasonable person would have had the same perception. Logically, the Policy cannot contemplate that only exculpatory evidence occurring after the sexual activity in question is irrelevant. However, because of the Policy's vague language, this was the Hearing Officer's arbitrary and subjective determination.

The Policy's vague, multi-paragraph definition of "Consent" invited the Hearing Officer to treat the Complainant's post-encounter interpretation of the digital penetration as "assault" as probative of responsibility but categorically refuse to consider the Complainant's contemporaneous statements and conduct indicating that a

---

issue of consent, the trier of fact must consider the "attendant circumstances" and the parties' behavior before and after the act of intercourse.

"Reasonable Person" would not have known that the conduct in question was not consensual.

Contrary to Defendants' assertions, Plaintiff does not allege hypothetical vagueness, or vagueness as applied to others. *U.S. v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020) reiterates that "a statute is unconstitutionally vague if it "encourages arbitrary or discriminatory enforcement." That is what occurred here.

The fact that Plaintiff failed to raise a constitutional vagueness challenge during the University's administrative proceedings is irrelevant. The University's internal complaint process is not the proper forum for such a challenge. The Hearing Officer had a duty to find whether the Policy was violated based on Complainant's accusations, not to resolve constitutional issues. Nor is there any law requiring Plaintiff to have done so to bring such a claim now.

In *Meriwether v. Hartop*, 992 F.3d 492, 518 (6th Cir. 2021), the Sixth Circuit rejected the plaintiff's vagueness claim, in pertinent part, because he failed to sufficiently allege and argue on appeal that his employer's policy allowed for arbitrary and discriminatory enforcement. According to the Sixth Circuit, Meriwether's reliance on a single "conclusory assertion" in his Amended Complaint that the policy "gives officials unbridled discretion in enforcement does not cut it." *Id.* The Court noted that he likewise failed to sufficiently develop this argument on appeal. *Id.* The Sixth Circuit did not hold that Meriwether was required to raise his constitutional challenge in the employer's disciplinary process in order to do so in litigation.

Moreover, in *Meriwether*, the plaintiff was admittedly on notice that his employer's policy prohibited his conduct. Meriwether consulted university administrators about the specific issue at hand and was advised that he was required to use his student's preferred pronouns. *Meriwether*, 992 F.3d at 518. He chose not to comply with this directive and was disciplined. *Id.* The Sixth Circuit reasoned that because he had express notice that his conduct was forbidden by his employer's policy, he could not claim the policy was unconstitutionally vague as applied to his case. *Id.* This case is readily distinguishable. Here, Plaintiff has consistently alleged that he was never on notice that his conduct violated the Policy. First, he denied engaging in digital penetration. Second, in this case, Plaintiff properly alleges that, even adopting all of Complainant's facts as true[2], the Policy is still vague as applied to the case against him. *Meriwether* is uninstructive.

Finally, Defendants' argument that Plaintiff received training on the Policy is irrelevant. Defendants provide no substantive information on what the training consisted of, other than to say that Plaintiff was advised of the definition of "Consent". ECF No. 101, PageID.3158. Defendants conspicuously fail to attach a copy of the training module, and do not take the position that the training gave students clarifying examples, narrowing context, or other principled ways to determine whether "Consent" was present in real life. As in *Doe v. Univ. of Michigan*, 721 F. Supp. 852, 867 (E.D. Mich.

[2] Contrary to Defendants' assertions, Plaintiff does not admit removing Complainant's pants. He merely recites the facts as alleged by the Complainant, because he is accepting her factual narrative for the sake of argument.

1989)[3], the fact that the University could have, but declined to provide interpretive resources illustrates that the scope and meaning of the Policy is unclear. Finally, student training would not resolve the question of whether the Policy gives factfinders sufficiently definite standards to prevent enforcement based on subjective or arbitrary criteria. *Grayned v. City of Rockford*, 408 U.S. 108-109 (1972); *Kolender v. Lawson*, 461 U.S. 357-358 (1983).

**B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief**

"The second factor … asks whether the movant is likely to suffer irreparable harm in the absence of the injunction." *Univ. of Cincinnati*, 872 F.3d at 407. Without an injunction, Plaintiff will be suspended for two years and suffer reputational harm from having been found to have sexually assaulted another student. ECF No. 77, PageID.1599. "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Overstreet v. Lexington–Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). As the Sixth Circuit held in *Univ. of Cincinnati*, "Defendants' characterization of Doe's injury as "speculative

---

[3] Plaintiff properly relies on *Doe v. Univ. of Mich*, *Dambrot*, and *Smith ex. rel. Smith*. Defendants misapprehend *United States v. Williams*, which held, as to a facial challenge specifically, that "[a]lthough ordinarily [a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 304 (2008) (cleaned up). Plaintiff does not allege a facial challenge. *Williams* is irrelevant.

or unsubstantiated" does not rebut that presumption. *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (citation omitted)." *Univ. of Cincinnati*, 872 F.3d at 407.

Nor has there been unreasonable delay here. Current counsel filed this motion approximately seven weeks after the Second Amended Complaint. This is not an unreasonable amount of time in which to make a legally complex request for preliminary relief in an undisputedly fact and document-intensive dispute. *Kerwin on behalf of Nat'l Lab. Rels. Bd. v. Trinity Health Grand Haven Hosp.*, 174 F.4th 942, 959 (6th Cir. 2026) supports Plaintiff's position. There, the Sixth Circuit affirmed denial of injunctive relief where the plaintiff delayed seeking injunctive relief for four months. *Kerwin*, 174 F.4th at 959. The Court reasoned that, in the very specific context of seeking an injunction requiring an employer to resume bargaining with a union under § 10(j) of the National Labor Relations Act, a four-month delay indicated that "temporary relief will not add significant "marginal benefit" beyond "a final Board order" and "most (if not all) of the damage to the union was inflicted in the months before the Director petitioned for an injunction." *Id.* The very specific scenario contemplated in *Kerwin* is distinguishable from this case. An injunction allowing Plaintiff to return to school and complete the few credits he has left to obtain his degrees would undisputedly be of significant benefit. All the damage to Plaintiff's career and reputation from the violation of his constitutional rights was not already inflicted before the instant motion was filed. "Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. *Miami Univ.*, 882 F.3d at 600." *Doe v. Baum*, 903 F.3d 575, 582 (6th

Cir. 2018). Plaintiff stands not only to lose his protected interest in his education but is likely to also suffer degradation of personal relationships, and difficulty obtaining future educational and employment opportunities. *Id.* If injunctive relief is granted here, Plaintiff could return to classes at the beginning of the 2026 fall semester, and complete his degrees while the merits of his legal claims are resolved.

As this Court already held, absent injunctive relief, Plaintiff will be suspended from the University for two years and suffer reputational harm from having been found to have sexually assaulted another student. ECF No. 77, PageID.1599. The question before the Court remains whether "a full two-year suspension *and* the reputational harm associated with having been found to have sexually assaulted another student amounts to irreparable harm". ECF No. 77, PageID.1600 (emphasis in original). This Court correctly held that Plaintiff has shown the presence of irreparable harm that would weigh in favor of preliminary relief. ECF No. 77, PageID.1601.

### C. Issuance of an Injunction Would Not Cause Substantial Harm to Others and Would Serve the Public Interest

Plaintiff does not seek broader relief than before. He seeks an injunction allowing him to complete the approximately 13 credits remaining to obtain a bachelor's degree, and to temporarily expunge negative notations on his official University record associated with the finding of responsibility made against him, until the merits of his legal claims are determined. Plaintiff does not seek to "undo the investigation", "wipe

the slate clean" or "complete exoneration". He seeks narrow, temporary relief that would cause no substantial harm to anyone, including the Complainant.

This Court has already correctly held that there is no risk of harm to any individual, including Complainant, that weighs against granting an injunction. ECF No. 77, PageID.1604. Any risk of harm to the Complainant remains "relatively insubstantial", because the time period it would take Plaintiff to complete his degree is "brief and limited" and "injunctive relief could be crafted as to minimize the risk of Plaintiff and Complainant encountering one another." *Id.* at PageID.1603. Defendants' stipulation "to the fact that Complainant is unlikely to suffer significant harm if relief were granted" is dispositive of this issue. *Id.* at PageID.1604.

This Court correctly held that Defendants' lack of urgency in resolving the allegations against Plaintiff "suggests that the University is not concerned that Plaintiff poses a risk to other students." *Id.* at PageID.1604. They offer no explanation or example of any possible harm that could come to any other student if an injunction was granted. It is undisputed that there was never any allegation or finding of violence, force, coercion, or any threats thereof in the case against Plaintiff.

Plaintiff's injunctive relief does not seek to undermine or second-guess the University's disciplinary process. It merely seeks to preserve the status quo while his constitutional rights are decided. The Court's previous decision that injunctive relief would undermine the disciplinary process was entirely premised on its holding that Plaintiff lacked any likelihood of success on the merits of his previous legal claims.

Plaintiff now asserts new claims, based on new legal theories and different portions of the factual record. As set forth above, he has a strong likelihood of success on his legal claims, which is dispositive of this issue. If Plaintiff is likely to prevail in showing that Defendants violated his constitutional right to due process[4], preserving the status quo as a means of safeguarding his civil rights would not undermine the disciplinary process. Ensuring the University follows the law does not undermine its ability to enforce its rules. The balance of harms clearly weighs in Plaintiff's favor. He is substantially likely to vindicate his civil rights in the face of irreparable harm, and an injunction would not harm the University or any other individual.

Finally, the fourth and final factor weighs in favor of granting injunctive relief because Plaintiff has demonstrated both a likelihood of success on the merits and irreparable injury. Defendants' assertion that "nothing has changed" ignores that he brings new legal claims, which he has a substantial likelihood of prevailing on. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**D. An Order Enjoining Against Plaintiff's Suspension Would Preserve the Status Quo**

[4] *See Baum*, 903 F.3d at 582 ("Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct. *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018); *Univ. of Cincinnati*, 872 F.3d at 400; *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016).").

The last uncontested status between the parties was Plaintiff's University record being devoid of a finding that he engaged in sexual assault, and Plaintiff being actively enrolled in classes. An order enjoining these two actions until a decision is made on the merits of his legal claims would preserve the status quo.

Defendants' argument on this point is contrary to well-settled Sixth Circuit law. This Court should not dispense with the controlling legal standard in favor of following a non-controlling district court opinion from the Fifth Circuit. In the Sixth Circuit,

> "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury."

*Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

In *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 398 (6th Cir. 2017), the Sixth Circuit granted the same injunctive relief sought here based on the same timeline of events that has occurred in this case. After the University of Cincinnati found that he engaged in sexual assault in violation of university policy, Doe was suspended on September 23, 2016. *Univ. of Cincinnati*, 872 F.3d at 398. Doe thereafter filed suit and sought a preliminary injunction enjoining against his suspension, which the Sixth Circuit granted. *Id.* at 398, 407.

It is irrelevant that the finding against Plaintiff and his suspension were in effect when his lawsuit and instant motion were filed, because it is undisputed that the last

uncontested status between the parties was before the finding and suspension. In *Balow v. Michigan State Univ.*, 620 F. Supp. 3d 694, 700 (W.D. Mich. 2022), the plaintiffs, members of the women's varsity swimming and diving team, filed suit while their team still existed at Michigan State. The Court denied the plaintiffs' initial motion for a preliminary injunction to stop the school from executing its plan to eliminate the women's varsity swimming and diving team. *Id.* Once the team had been eliminated, the plaintiffs filed another motion for preliminary injunction to enjoin against the team being eliminated. *Id.* The Court rejected the same argument Defendants make here about preservation of the status quo, holding that,

> "the last uncontested status between the parties is the existence of a varsity women's swimming and diving team. Thus, the Court will consider whether it should issue an injunction requiring MSU to restore that team, keeping in mind that the focus is "on prevention of injury by a proper order[.]"

*Id.* at 701. The question for the Court is the same here as in *Balow* and *Cincinnati*. The last uncontested status between the parties was Plaintiff's University record being devoid of a finding that he engaged in sexual assault, and Plaintiff being actively enrolled in classes. The Court should, therefore, consider whether it should issue an injunction requiring Defendants to clear Plaintiff's University record of the finding against him and allow him to re-enroll in classes.

Contrary to Defendants' assertions, the instant motion does not seek "affirmative relief" or all the relief Plaintiff is entitled to at a trial on the merits of his

claims. Defendants rely solely on *Cox v. Jackson*, 579 F. Supp. 2d 831 (E.D. Mich. 2008), which is clearly distinguishable. There, the plaintiff brought an Eighth Amendment deliberate indifference claim asserting, contrary to record evidence, that defendants denied him surgery recommended by doctors at a local hospital. *Cox*, 579 F. Supp. 2d at 842. In denying the injunction, the Court noted that Cox improperly sought "affirmative relief" as opposed to preliminary relief that would preserve the status quo between the parties. *Id.* at 855, n.8.

In sharp contrast, the instant motion seeks only the relief necessary to temporarily preserve the status quo until the merits of his claims are decided. At a trial on the merits of his due process claim as to the vagueness of the Policy, Plaintiff would receive permanent injunctive relief, as well as other forms of legal and equitable relief as to this claim, as alleged in his Second Amended Complaint.

Dated: August 18, 2026

Respectfully submitted,

**DEBORAH GORDON LAW**
***/s/ Deborah L. Gordon***
Deborah L. Gordon (P27058)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send

notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
***/s/ Deborah L. Gordon***
Deborah L. Gordon (P27058)
*Attorneys for Plaintiff*
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com